**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

T-ZONE HEALTH, INC.,                     )
                                         )
                    Plaintiff,           )
                                         )        No. 2:20-cv-02519-DCN
          vs.                            )
                                         )        **ORDER**
SOUTHSTAR CAPITAL, LLC,                  )
                                         )
                    Defendant.           )
_____ )

The following matter is before the court on defendant SouthStar Capital, LLC's

("SouthStar") motion to dismiss, ECF No. 5.  For the reasons set forth below, the court

grants in part and denies in part the motion.

## I.  BACKGROUND

Plaintiff T-Zone Health, Inc. ("T-Zone") is an importer and wholesaler of various

fitness and health-related products.[1]  SouthStar and its affiliated entities provide various

financial services to commercial businesses, including invoice financing, factoring of

accounts receivable, and the collection of receivables.  One of SouthStar's customers (the

"Customer") sells fitness products through large retailers, such as Costco and Sam's

Club.  SouthStar's wholly owned subsidiary, SouthStar Financial, LLC, provides various

financial services to the Customer, including but not limited to financing its purchases of

fitness equipment from T-Zone.

_____

[1] Unless otherwise noted, the following background is derived from the
complaint.

1

Beginning around June of 2019, T-Zone and SouthStar entered into an agreement with regard to the delivery of and payment for fitness equipment purchased by the Customer (the "Agreement"). Under the Agreement, the Customer would submit an order to T-Zone for fitness equipment. Upon receipt of the equipment in its warehouse, T-Zone would issue an invoice for the ordered equipment and send a copy of the invoice to SouthStar via e-mail for approval and confirmation that it would pay the invoice. As soon as SouthStar sent its approval and confirmation, T-Zone would release the ordered equipment to the Customer. After that release, SouthStar would remit payment of the invoice via wire transfer to T-Zone.

On July 29, 2019, T-Zone issued Invoice Number T38955 in the amount of $29,948.25 to the Customer and sent a copy to SouthStar on the same day. Before the close of business that day, SouthStar sent an acknowledgement of the invoice to T-Zone. After receiving that acknowledgment, T-Zone promptly released the equipment identified in the invoice to the Customer. However, SouthStar failed to pay the amount owed under the invoice. This same course of events occurred on five more occasions over the next thirty days. Each time, T-Zone sent an invoice to SouthStar, SouthStar sent an acknowledgement of the invoice to T-Zone, and T-Zone released the equipment to the Customer. Both before July 29, 2019 and subsequent to August 20, 2019, SouthStar paid T-Zone for all of the invoices that it acknowledged. However, SouthStar refuses to pay the six invoices that are the subject of this lawsuit.

On July 2, 2020, T-Zone filed a complaint against SouthStar, alleging breach of contract, promissory estoppel, unjust enrichment, and unfair trade practices. ECF No. 1, Compl. On September 4, 2020, SouthStar filed a motion to dismiss pursuant to Federal

2

Rule of Civil Procedure 12(b)(6).  ECF No. 5.  On September 17, 2020, T-Zone

responded, ECF No. 8, and on September 24, 2020, SouthStar replied, ECF No. 9.  As

such, this motion has been fully briefed and is now ripe for review.

## II.  STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for

"failure to state a claim upon which relief can be granted."  When considering a Rule

12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true

and draw all reasonable inferences in the plaintiff's favor.  E.I. du Pont de Nemours &

Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011).  But "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  On a motion to dismiss, the

court's task is limited to determining whether the complaint states a "plausible claim for

relief."  Id. at 679.  Although Rule 8(a)(2) requires only a "short and plain statement of

the claim showing that the pleader is entitled to relief," "a formulaic recitation of the

elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555 (2007).  Instead, the "complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678

(quoting Twombly, 550 U.S. at 570).

## III.  DISCUSSION

SouthStar asks the court to dismiss T-Zone's causes of action for unjust

enrichment and unfair trade practices under Rule 12(b)(6) for failure to state a claim.  The

court discusses each cause of action in turn below, ultimately denying the motion as to T-

Zone's unjust enrichment claim and granting it as to its unfair trade practices claim.

### A. Unjust Enrichment

SouthStar first argues that T-Zone fails to state a claim for unjust enrichment. An unjust enrichment claim is an equitable claim whereby the law implies a contract between the parties. Turner v. Rams Head Co., 2007 WL 2579386, at *7 (D.S.C. Sept. 4, 2007). "A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belongs to another." Thomas v. Ford Motor Co., 2014 WL 1315014, at *5 (D.S.C. Mar. 31, 2014) (citing Dema v. Tenet Physician Servs.-Hilton Head, Inc., 678 S.E.2d 430, 434 (S.C. 2009)). One seeking to recover for unjust enrichment must show: "(1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." Myrtle Beach Hosp., Inc. v. City of Myrtle Beach, 532 S.E.2d 868, 872 (S.C. 2000); In re MI Windows and Doors, Inc., 914 F.Supp. 2d 744, 754 (D.S.C. 2012). SouthStar argues that T-Zone's unjust enrichment claim fails at the first element—a benefit conferred by T-Zone upon Southstar. The court finds that T-Zone has sufficiently pled this element to survive the motion to dismiss.

T-Zone alleges that T-Zone and SouthStar entered into the Agreement whereby the Customer submitted orders for fitness equipment to T-Zone; T-Zone issued invoices for such equipment to the Customer and SouthStar; upon acknowledgement by SouthStar that it would pay the invoice, T-Zone released the ordered equipment to the Customer; and promptly after that release, SouthStar remitted payment of the invoice via wire transfer to T-Zone. According to T-Zone, for six of those invoices, SouthStar sent an acknowledgment to T-Zone, causing T-Zone to release the ordered equipment to the

Customer, but subsequently refused to pay these invoices. T-Zone further alleges that "[u]pon information and belief, SouthStar has received payment from the retailers for the equipment identified in the [six disputed invoices], but has refused to remit to T-Zone the amount it is owed on those invoices." Compl. ¶ 46. At this stage, the court must accept the allegations in T-Zone's complaint as true, and those allegations sufficiently state that SouthStar was conferred a benefit by T-Zone—namely receipt of payment from retailers for equipment provided T-Zone. SouthStar's arguments that no contractual agreement actually existed between T-Zone and SouthStar, that the funds flow did not operate in the manner alleged, and that any amounts received by SouthStar "are being used to satisfy a bona fide debt" are inapposite in the context of a motion to dismiss. ECF No. 5-1 at 11.

Specifically, in its motion, SouthStar relies on a "Factoring Agreement" between SouthStar and the Customer to argue that the Customer, not SouthStar, received any benefit conferred by T-Zone. ECF No. 5-1 at 4. The court may not consider this agreement to resolve the instant motion, as it is not referenced in, much less integral to, the complaint. See E.I. du Pont, 637 F.3d at 448 (explaining that consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is "integral to and explicitly relied on in the complaint," and when "the plaintiffs do not challenge [the document's] authenticity."). Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment. Id. This conversion is not appropriate when the parties have not had an opportunity to conduct reasonable discovery. Id. In its complaint, T-Zone alleges that the Agreement between T-Zone and SouthStar—not the purported Factoring Agreement between SouthStar and the Customer—governed the

5

parties' conduct and the flow of funds between them.  The court must rely on the

Agreement alleged in the complaint to determine whether T-Zone sufficiently pled that it

conferred a benefit upon SouthStar.  As explained, accepting those allegations as true, the

court concludes that T-Zone has so pled.  SouthStar may properly present evidence to

challenge those allegations and show that the Customer, rather than SouthStar, retained

any benefit in a motion for summary judgment after the parties have had the benefit of

discovery.[2]  Because the court may not consider any such evidence at this time, it denies

SouthStar's motion to dismiss with respect to the unjust enrichment claim.

### B.  Unfair Trade Practices

SouthStar additionally argues that T-Zone fails to state a claim under the Unfair

Trade Practices Act, S.C. Code Ann. §§ 39-5-10, et seq. ("SCUTPA").  SCUTPA

prohibits "unfair methods of competition and unfair or deceptive acts or practices in the

conduct of any trade or commerce."  S.C. Code Ann. § 39-5-20(a).  Trade or commerce

includes "the advertising, offering for sale, sale or distribution of any services and any

property . . . and any other article, commodity or thing of value."  S.C. Code Ann. § 39-5-

10(b).  To recover in an action under SCUTPA, the plaintiff must show: (1) the defendant

engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the

---

[2] For similar reasons, the court is unmoved by SouthStar's argument in its reply
that T-Zone has "a direct contractual remedy at law against [the Customer] for breach of
contract" such that a claim for unjust enrichment is not available.  ECF No. 9 at 7.
SouthStar is correct that "equitable claims are available only where there is no adequate
remedy at law."  Douse v. Colonial Life & Accident Ins. Co., 2009 WL 10678302, at *10
(D.S.C. Feb. 3, 2009); Turner v. Rams Head Co., 2007 WL 2579386, at *7 (D.S.C. Sept.
4, 2007) ("[A]n action for unjust enrichment cannot lie in the face of an express
contract.").  However, because the court may not consider extrinsic documents, including
any contract between T-Zone and the Customer, at this stage of the litigation, the court
cannot dismiss the unjust enrichment claim on this ground.

plaintiff suffered actual, ascertainable damages as a result of the conduct; and (3) the

unfair or deceptive act affected public interest.  S.C. Code Ann. §§ 39-5-10, et seq.; see

Havird Oil Co. v. Marathon Oil Co., 149 F.3d 283, 291 (4th Cir. 1998).  SouthStar

specifically disputes the third element—that SouthStar's conduct had any impact on the

public interest.  The court agrees that T-Zone has not sufficiently pled this element, and

the SCUPTA claim must accordingly be dismissed.

        To satisfy the third element of a SCUTPA unfair trade practices claim, T-Zone

must establish, by specific facts, that members of the public were adversely affected by

SouthStar's allegedly unfair conduct.  See Jefferies v. Phillips, 451 S.E.2d 21, 23 (S.C.

App. 1994) (quoting Daisy Outdoor Advertising Co. v. Abbott, 451 S.E.2d 394, 397 (S.C.

App. 1994)).  "An unfair or deceptive trade practice has an impact upon the public

interest if it has the potential for repetition."  York v. Conway Ford, 480 S.E.2d 726, 728

(S.C. 1997); Haley Nursery Co. v. Forrest,  381 S.E.2d 906, 908 (S.C. 1989); Global

Protection Corp. v. Halbersberg, 503 S.E.2d 483, 487 (S.C. App. 1998).  "The potential

for repetition may be shown in either of two ways: (1) by showing the same kind of

actions occurred in the past, thus making it likely they will continue to occur absent

deterrence; or (2) by showing the company's procedures created a potential for repetition

of the unfair and deceptive acts."  Singleton v. Stokes Motors, Inc., 595 S.E.2d 461, 466

(S.C. 2004).  However, a deliberate or intentional breach of contract, without more, will

not sustain a claim under the SCUTPA.  Ardis v. Cox.,  431 S.E.2d 267, 271 (S.C. App.

1993).  "An unfair or deceptive act or practice that affects only the parties to a trade or a

commercial transaction is beyond [SCUTPA]'s embrace . . . ."  Noack Enterprises, Inc. v.

Country Corner Interiors of Hilton Head Island, Inc., 351 S.E.2d 347, 349–50 (S.C. App.

1986).  "Otherwise every intentional breach of contract within a commercial setting would constitute an unfair trade practice and thereby subject the breaching party to treble damages."  Ardis, 431 S.E.2d at 271.

T-Zone argues that the complaint specifically alleges that "SouthStar's act or practice of failing and refusing to remit such payments to T-Zone impacts the public interest in that it is capable of repetition and, in fact, may have been repeated by SouthStar in connection with the invoices that are the subject of this lawsuit."  Compl. ¶ 52.  Beyond this broad conclusory allegation, T-Zone provides no specific facts demonstrating that SouthStar has conducted the same kind of actions in the past or that their procedures or business practices create a potential for repetition in the future.  See Prince Payne Enterprises, Inc. v. Tigua Enterprises, Inc., 2019 WL 5394197, at *6 (D.S.C. Oct. 22, 2019) ("[M]ere recitals of the elements of a SCUTPA claim without allegations of fact to support these legal conclusions and are is insufficient to state a SCUTPA claim.").  The court is not persuaded by T-Zone's argument that by alleging that SouthStar failed to pay six separate invoices, T-Zone has sufficiently pled that SouthStar's unfair conduct is capable of repetition.  The court will not find public impact simply because T-Zone alleges multiple breaches of the same contractual agreement between it and SouthStar.

In an analogous case, a subcontractor sued a contractor for failing to pay invoices for operations and maintenance services performed.  Noting that the dispute entailed only an alleged breach of contract and that "[t]here [we]re no factual allegations that [the contractor] ha[d] engaged in improper conduct with any party other than [the subcontractor]," the court found that the subcontractor failed to sufficiently allege an

8

adverse impact on public interest.  Prince Payne Enterprises, Inc. v. Tigua Enterprises,

Inc., 2019 WL 5394197, at *6 (D.S.C. Oct. 22, 2019).  Similarly, here, even though T-

Zone alleges that SouthStar failed to remit payments due under multiple invoices, these

allegations relate to the same breach of contract claim and do not show that SouthStar

engaged in similar improper conduct with any party other than T-Zone.[3]  "Conduct that

affects only the parties to the transaction and not the public interest provides no basis for

a SCUTPA claim."  Bessinger v. Food Lion, Inc., 305 F.Supp.2d 574, 581 (D.S.C. 2003).

"Without proof of specific facts disclosing that members of the public were adversely

affected by the unfair conduct or that they were likely to be so affected, the result is a

'speculative claim of adverse public impact [ ] that will not suffice under the

[SCUPTA].'"  Sinclair & Assocs. of Greenville, LLC v. Crescom Bank, 2016 WL

6804326, at *3 (D.S.C. Nov. 17, 2016) (modifications in original) (quoting Bracken v.

Simmons First Nat. Bank, 2014 WL 2613175, at *6 (D.S.C. June 9, 2014)).  No such

---

[3] In its response to the motion to dismiss, T-Zone cites two prior lawsuits against
SouthStar that included SCUPTA claims to illustrate that SouthStar's alleged unfair trade
practices have the potential for repetition.  T-Zone does not explain what conduct was at
issue in those actions nor the disposition of those SCUPTA claims.  After conducting its
own review, the court finds the facts underlying those actions dissimilar to the allegations
in this action.  The first cited action involved an employer-employee dispute related to
SouthStar's payment of commissions.  See Hatfield v. Linney, et al., No. 2015-CP-10-
06853 (S.C. Cir. Ct. 2015).  The second cited action alleged that SouthStar breached a
settlement agreement.  GSH of Alabama, LLC v. SouthStar Financial, LLC, No. 2:17-cv-
02689-DCN (D.S.C. 2017), ECF No. 1.  Notably, the plaintiff in that action withdrew its
SCUPTA claim as insufficient to withstand a motion to dismiss.  Id., ECF No. 23 at 1–2.
Therefore, even if the court took judicial notice of those cases, they fail to support T-
Zone's allegation that SouthStar's unfair conduct of failing to remit invoice payments
pursuant to a commercial agreement has occurred in the past or is capable of repetition.
PTA-FLA, Inc. v. ZTE Corp., 2015 WL 13593694, at *16 (D.S.C. July 27, 2015), aff'd,
715 F. App'x 237 (4th Cir. 2017) ("Plaintiff's allegations of potential for repetition also
fail to raise a plausible inference of an adverse public interest because the other events on
which Plaintiff relies are not similar to the allegedly wrongful actions on which the
SCUTPA Claim depends.").

specific facts are alleged here, and T-Zone's claim of adverse impact to the public does

not rise above the level of mere speculation.  Accordingly, the court dismisses T-Zone's

SCUTPA claim

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART AND DENIES IN**

**PART** the motion in accordance with this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 1, 2021**
**Charleston, South Carolina**

10