## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| T-ZONE HEALTH INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-cv-02519-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| SOUTHSTAR CAPITAL LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The following matter is before the court on plaintiff T-Zone Health Inc.'s ("T-Zone") motion for summary judgment, ECF No. 32, and on defendant SouthStar Capital LLC's ("SouthStar") motion for summary judgment, ECF No. 33. For the reasons set forth below, the court denies the motions.

## I.  BACKGROUND

This case arose out of a series of contract disputes between T-Zone and SouthStar. T-Zone is a Canadian corporation that imports and sells at wholesale various fitness and health related products. ECF No. 1, Compl. ¶¶ 1, 8. SouthStar is a limited liability company organized under South Carolina law that provides various financial services to commercial businesses, including invoice financing, factoring of accounts receivable, and the collection of receivables. Id. ¶¶ 2, 9. One of SouthStar's customers, 10 Minute Fitness, sells fitness products through large retailers such as Costco and Sam's Club. Id. ¶ 10. SouthStar provides financial services to 10 Minute Fitness including, but not limited to, financing its purchases of fitness equipment from T-Zone. Id. ¶ 11.

T-Zone and SouthStar allegedly entered into an agreement (the "Agreement") beginning in June 2019 regarding the delivery and payment for fitness equipment

purchased by 10 Minute Fitness from T-Zone.  Id. ¶ 12.  That Agreement provided that

10 Minute Fitness would submit an order to T-Zone for fitness equipment.  Id. ¶ 13.

Upon receipt of the equipment in its warehouse, T-Zone would issue an invoice to 10

Minute Fitness and a copy of the invoice would be sent to SouthStar via email for its

approval and confirmation that it would pay the invoice once the equipment was released.

Id.  Once SouthStar replied via email to T-Zone acknowledging the invoice, T-Zone

would release the equipment, and promptly after the equipment's release, SouthStar

would remit payment of the invoice via wire transfer to T-Zone.  Id.  During the period

from June 2019 through July 28, 2019, both SouthStar and T-Zone performed according

to the Agreement.  Id. ¶ 14.

However, from July 29, 2019, until August 20, 2019, T-Zone sent six invoices

totaling $167,125 to 10 Minute Fitness with a copy of the invoice to SouthStar.[1]  T-Zone

purportedly released the equipment upon SouthStar's acknowledgment of the six

invoices, but each time, SouthStar ostensibly failed to pay the invoice.  Id. ¶¶ 17, 20, 23,

26, 29, 32.  Thereafter, on a regular basis, T-Zone submitted the invoices to 10 Minute

_____

[1] On July 29, 2019, T-Zone issued invoice number T38955 in the amount of $29,948.25 to 10 Minute Fitness and a copy of the invoice to SouthStar, which SouthStar acknowledged that same day.  Id. ¶¶ 15–16.  On July 31, 2019, T-Zone issued invoice number T38968 in the amount of $18,461.24 and invoice number T38969 in the amount of $37,743 to 10 Minute Fitness and a copy of the invoice to SouthStar, which SouthStar acknowledged on August 2, 2019 and August 7, 2019, respectively.  Id. ¶¶ 18–19, 21–22. On August 12, 2019, T-Zone issued invoice number T38983 in the amount of $32,828 to 10 Minute Fitness and a copy of the invoice to SouthStar which SouthStar acknowledged on August 16, 2019.  Id. ¶¶ 24–25.  On August 16, 2019, T-Zone issued invoice number T38997 in the amount of $17,072.25 to 10 Minute Fitness and a copy of the invoice to SouthStar which SouthStar acknowledged on August 27, 2019.  Id. ¶¶ 27–28.  On August 20, 2019, T-Zone issued invoice number T39009 in the amount of $31,080.25 to 10 Minute Fitness a copy of the invoice to SouthStar which SouthStar acknowledged on August 27, 2019.  Id. ¶¶ 30–31.

Fitness and forwarded them to SouthStar for review and acknowledgement. Id. ¶ 33. As of the date the complaint was filed, SouthStar had paid the invoices forwarded after August 20, 2019, but refused to pay the invoices described for the period from July 29, 2019, to August 20, 2019. Id. T-Zone brought this action alleging that SouthStar was obligated to pay T-Zone for invoices totaling $167,125.[2] Id. ¶ 4.

On July 2, 2020, T-Zone filed a complaint against SouthStar alleging breach of contract, promissory estoppel, unjust enrichment, and unfair trade practices. ECF No. 1, Compl. On September 1, 2021, the court granted in part and denied in part SouthStar's motion to dismiss, ultimately dismissing T-Zone's unfair trade practices claim. ECF No. 12. On February 27, 2023, T-Zone filed a motion for summary judgment. ECF No. 32. On March 30, 2023, SouthStar responded in opposition, ECF No. 40, and T-Zone replied on April 13, 2023, ECF No. 44. On February 28, 2023, SouthStar filed a motion for summary judgment. ECF No. 33. On March 30, 2023, T-Zone responded in opposition, ECF No. 39, and SouthStar replied on April 13, 2023, ECF No. 45. On July 10, 2023, SouthStar filed a notice of filing substitute exhibits to substitute three attachments included in its original motion for summary judgment. ECF No. 52. The court held a hearing on these motions on July 11, 2023. ECF No. 53. As such, the motions have been fully briefed and are now ripe for review.

---

[2] The court notes that there is a discrepancy between the amount sought in the complaint and the total of the invoices described in the complaint. The sum of the invoices ($29,948.25; $18,461.25; $37,743; $32,828; $17,072.25 and $31,080.25) comes to $167,133. Compl. ¶¶ 15, 18, 21, 24, 27, 30. Nevertheless, T-Zone seeks $167,125. Compl. ¶ 4. At the hearing the parties agreed that the amount sought came to $167,125. ECF No. 53. Thus, the court assumes the amount in controversy is $167,125.

## II.  STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  In so doing, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact."  Major v. Greenville Hous. Auth., 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012).  Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. (quoting Fed. R. Civ. P. 56(e)).  The plain language of Federal Rule of Civil

4

Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion." Major, 2012 WL 2000680, at *1.

"Litigants may not thrust upon the Court the burden of combing through the record to make a case on their behalf." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."). Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Local Civil Rule 7.06 governing responses to motions requires that "[a]ny response supported by discovery material shall specify with particularity the portion of the discovery material relied upon in support of counsel's position, summarize the material in support of counsel's position, and attach relevant portions of the discovery material or deposition." Local Civ. Rule 7.06 (D.S.C.).

## III.  DISCUSSION

The court considers the two pending motions for summary judgment together as the parties each seek summary judgment on all three causes of action: breach of contract,

5

promissory estoppel, and unjust enrichment. The court evaluates whether either party has clearly shown that there is no genuine dispute of material facts such that it may grant summary judgment. See Knibbs v. Momphard, 30 F.4th 200, 213 (4th Cir. 2022) ("A dispute is a 'genuine dispute,' for purposes of precluding summary judgment, if a reasonable jury could return a verdict for the non-moving party."). The court ultimately finds that neither party met this standard and denies both motions.

### A. Breach of Contract

To establish breach of contract under South Carolina law, a plaintiff must establish three elements: (1) a binding contract entered into by the parties; (2) breach or unjustifiable failure to perform the contract; and (3) damages as a direct and proximate result of the breach. See King v. Carolina First Bank, 26 F. Supp. 3d 510, 517 (D.S.C. 2014) (applying South Carolina law). Damages recoverable for a breach of contract must either flow as a natural consequence of the breach or must have been reasonably within the parties' contemplation at the time of the contract. Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 880 (S.C. Ct. App. 1997). Under South Carolina law, to prevail on a breach of contract claim, the plaintiff bears the burden of establishing the three elements of a breach of contract claim by a preponderance of the evidence. See Ferguson v. Waffle House, Inc., 18 F. Supp. 3d 705, 731 (D.S.C. 2014) (citing Fuller v. E. Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962)).

The parties primarily debate whether T-Zone has adequately established contract formation—the first element of a breach of contract claim—and whether SouthStar's actions proximately caused T-Zone's damages. In particular, the parties dispute whether a contract was formed: whether there was an offer, acceptance, consideration, and/or a

meeting of the minds.[3]  See, e.g., ECF No. 32-1 at 10–11, ECF No. 33-1 at 23–28.

Additionally, the parties dispute whether the identified damages were proximately caused

by the purported breach since T-Zone allegedly released equipment irrespective of

SouthStar's prompt payment.  See, e.g., ECF No. 33-1 at 21–22.

      T-Zone claims that it performed its duties and obligations under the agreement by

delivering the fitness equipment to 10 Minute Fitness.  Compl. ¶ 35.  It contends that

SouthStar alone breached the agreement and its contractual obligation to T-Zone by

failing to pay the six invoices described in the complaint, which is why T-Zone filed this

breach of contract claim.  Id. ¶ 36.  T-Zone argues that the Agreement clearly set forth

that if T-Zone supplied equipment to 10 Minute Fitness, SouthStar would simultaneously

pay.  ECF No. 32-1 at 5.  Thus, T-Zone claims that SouthStar's failure to make payments

to T-Zone constitutes breach of contract.  Id.  In response, SouthStar claims there are

many disputed material facts that preclude the court from determining that there was a

contract at the summary judgment stage.  See ECF No. 40 at 3–6.  SouthStar explains that

no contract was created when T-Zone requested payment from SouthStar on behalf of 10

Minute Fitness.  Id. at 10–11.  Moreover, SouthStar claims that T-Zone has provided no

evidence that SouthStar accepted T-Zone's offer.  Id. at 13.  Finally, SouthStar argues

that there was no consideration, which is a required element of contract formation.  Id. at

---

[3] SouthStar challenges the contract formation element in its response in opposition to T-Zone's motion for summary judgment and includes it as a basis for its own motion for summary judgment.  See ECF Nos. 33, 40. 33 at 24–28.  In its response in opposition, SouthStar claims contract formation was defective because there was no offer, no acceptance, and no consideration.  ECF No. 40 at 10–14.  In its motion for summary judgment, SouthStar argues that offer and acceptance cannot be inferred from the parties' course of dealing, no contract existed, and there was no meeting of the minds.  ECF No. 33-1 at 24.

16. SouthStar contends that since no contract was formed, there can be no breach of contract. Id. In reply, T-Zone emphasizes that there are three sources of purportedly undisputed material facts: (1) the email exchanges between T-Zone and SouthStar that confirm the terms of the relationship; (2) the transaction history regarding the approval, release, and payment for the fitness equipment; and (3) the emails from SouthStar in which it repeatedly promised to pay the $167,125 balance that is the subject of this lawsuit. ECF No. 44 at 1–2. Thus, T-Zone argues there was a contract because there was an offer and acceptance as evidenced by the email exchanges on July 8–9, 2019, (the "July 8–9 emails") between Susan Linney ("Linney"), the Chief Operating Officer of SouthStar, and Morris Aboody ("Aboody"), the Chief Executive Officer of T-Zone. Id. at 2–3. Furthermore, there was consideration because T-Zone suffered a detriment by releasing equipment and SouthStar received the benefit of a receivable from Costco. Id.

SouthStar also filed a motion for summary judgment on T-Zone's breach of contract cause of action arguing that no contract was formed between SouthStar and T-Zone for three reasons: (1) the companies did not have a consistent course of dealings with one another and to the extent there was an alleged course of dealing, it was too short to create a reliable contract; (2) they were not in privity of contract with one another;[4] and (3) there was no meeting of the minds. ECF No. 33-1 at 23–28. In response, T-Zone rebuts each argument by emphasizing that (1) course of dealing is not an element for

---

[4] SouthStar emphasizes that the relationship between T-Zone, 10 Minute Fitness, and SouthStar is "akin to the relationship between borrowers, lenders, and loan servicers in the mortgage context." ECF No. 33-1 at 26. Thus, SouthStar relies on caselaw from across the country which examines that relationship to argue that though T-Zone and 10 Minute Fitness had a contract with each other and 10 Minute Fitness and SouthStar also had a financing contract, that does not ipso facto create a contract between SouthStar and T-Zone. See id. at 26–27.

breach of contract; (2) privity of contract exists because the emails alone are sufficient to demonstrate a contractual relationship between T-Zone and SouthStar; and (3) there was a meeting of the minds because T-Zone offered to supply equipment, SouthStar accepted via Linney, and consideration was provided when T-Zone released the equipment. ECF No. 39 at 9–11. Finally, T-Zone stresses that SouthStar never objected to its obligation to make payments for the invoices, which suggests there was a contract. Id. at 11. In reply, SouthStar provides a copy of the July 8–9 emails exchange between Linney and Aboody to highlight that there is no indication in the email that Linney accepted either of Aboody's two options for payment nor is there indication that SouthStar promised to pay. ECF No. 45 at 3–5. However, even if the court were to construe the July 8–9 emails to constitute offer and acceptance, SouthStar argues that there is no consideration present because T-Zone had a preexisting legal obligation to release equipment to 10 Minute Fitness which means it cannot be used to prove consideration for a contract with SouthStar. Id. at 8.

The court considers each of the challenged elements of a breach of contract claim to determine whether there is a genuine dispute of material facts such that the elements of the claim—contract formation, breach of contract, and proximate causation of damages— can be resolved by summary judgment.

### 1. Contract Formation

"The elements required for formation of a contract are an offer, acceptance, and valuable consideration." Sauner v. Pub. Serv. Auth. of S.C., 581 S.E.2d 161, 166 (S.C. 2003). "In order for a contract to arise, there must be a meeting of the minds of the parties involved with regard to all essential and material terms of the agreement."

Hardaway Concrete Co., Inc. v. Hall Contracting Corp., 647 S.E.2d 488, 492 (S.C. Ct. App. 2007) (citing Player v. Chandler, 382 S.E.2d 891, 893 (S.C. 1989)). "Thus, for a contract to be binding, material terms cannot be left for future agreement." Stevens & Wilkinson of S.C., Inc. v. City of Columbia, 762 S.E.2d 696, 701 (S.C. 2014); see also id. at 703 ("[A]s long as the parties know there is an essential term not yet agreed on, there is no contract."). "In a contract for services two essential terms are the scope of the work to be performed and the amount of compensation." Id. at 701 (quoting W.E. Gilbert & Assocs. v. S.C. Nat'l Bank, 351 S.E.2d 171, 173 (S.C. Ct. App. 1986)). "Although the existence of a contract is ordinarily a question of fact for the jury, where the undisputed facts do not establish a contract, the question becomes one of law." Id. "An agreement which leaves open material terms is unenforceable." Id.

In construing a contract, the primary objective of the court is to ascertain and give effect to the intention of the parties. S. Atl. Fin. Servs., Inc. v. Middleton, 562 S.E.2d 482, 484–85 (S.C. Ct. App. 2002). A clear and explicit contract must be construed according to the terms the parties have used, with the terms to be understood in their plain, ordinary, and popular sense. Sphere Drake Ins. Co. v. Litchfield, 438 S.E.2d 275 (S.C. Ct. App. 1993). However, if the court determines the language of the contract is ambiguous, then "parol evidence is admissible to ascertain the true meaning and intent of the parties." Koontz v. Thomas, 511 S.E.2d 407, 411 (S.C. Ct. App. 1999). An ambiguous contract is one that can be understood in more ways than just one or is unclear because it expresses its purpose in an indefinite manner. Id.

SouthStar challenges contract formation in its response in opposition to T-Zone's motion for summary judgment and includes it as a basis for its own motion for summary

judgment.  See ECF Nos. 33, 40.  SouthStar claims contract formation was defective

because there was no offer, no acceptance, and no consideration.  ECF No. 40 at 10–14.

SouthStar also argues that contract formation was defective because offer and acceptance

cannot be inferred from the parties' course of dealing, no contractual privity existed

between SouthStar and T-Zone, and there was no meeting of the minds.  ECF No. 33-1 at

24.  In contrast, T-Zone argues that it is undisputed that T-Zone offered to be the

wholesale supplier of the equipment with the understanding that SouthStar would remit

payment for the equipment and that SouthStar accepted that offer, as proven both by the

email from Linney and through the parties' course of dealing.  ECF No. 32-1 at 5.

Further, T-Zone contends that there is privity of contract between SouthStar and T-Zone

and the emails alone are enough to demonstrate that a contractual relationship exists

between SouthStar and T-Zone.  ECF No. 39 at 9.

 Based upon review of the parties' respective arguments, the court finds that

almost all the material facts relevant to contract formation are in dispute.  Both parties

dispute the role of the July 8–9 emails and whether the communications constituted

contract formation—meaning, whether an offer was extended or accepted.  Compare ECF

No. 32-1 at 5 (concluding that a contract was clearly formed as established by the July 8–

9 emails), with ECF No. 33-1 at 15–19, 27–29 (concluding that the July 8–9 emails could

not form a contract because there was no meeting of the minds as the purported

agreement was ambiguous and "acknowledgement" did not mean agreement).  Similarly,

the parties have set forth competing facts over whether course of dealing could lead to a

contract formation.  Compare ECF No. 32-1 at 5 (inferring an agreement from the course

of dealing whereby acknowledgement resulted in payment of the acknowledged invoices

on fourteen separate occasions in 2019), with ECF No. 33-1 at 23–25 (arguing that the contested invoices arose less than two months into the parties' interactions such that course of dealing cannot be inferred). Thus, the facts are in dispute, and it is debatable whether or not a contract was formed—in other words, the evidence is such that a reasonable jury could return a verdict for either party. See Knibbs, 30 F.4th at 213.

### 2.    Proximate Causation of Damages

Damages recoverable for a breach of contract must either flow as a natural consequence of the breach or must have been reasonably within the parties' contemplation at the time of the contract. Hawkins, 493 S.E.2d at 880. Stated alternatively, "[t]he general rule is that for a breach of contract the [breaching party] is liable for whatever damages follow as a natural consequence and a proximate result of such a breach." Hotel & Motel Holdings, LLC v. BJC Enters., LLC, 780 S.E.2d 263, 272 (S.C. Ct. App. 2015) (quoting S. Glass & Plastics Co. v. Kemper, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012)). "[O]ne who seeks to recover damages for breach of a contract must demonstrate that he has performed his part of the contract, 'or at least that he was, at the appropriate time, able, ready, and willing to perform it.'" Id. (quoting Swinton Creek Nursery v. Edisto Farm Credit, ACA, 514 S.E.2d 126, 135 (S.C. 1999) (internal quotation marks and citation omitted)).

The parties dispute whether T-Zone may recover the $167,125.00, because it is a genuine issue as to whether that amount arose because of the purported breach. In its motion for summary judgment, SouthStar argues that under any cause of action T-Zone cannot show its damages were caused by SouthStar. ECF No. 33-1 at 21. SouthStar explains that "[b]ecause T-Zone's [corporate] designee testified that they would supply

12

the Machines irrespective of payment, the damages would not be the cause of SouthStar's alleged conduct." Id. at 22. Thus, "T-Zone cannot show that its damages arose due to any reliance on SouthStar, whether under contractual or equity principles." Id. at 23. T-Zone's arguments regarding damages are simple: it reiterates that it "has been injured in the amount of $167,125.00, the amount owed for the equipment that was released," which was set forth in the invoices. ECF No. 44 at 3.

Upon reviewing the parties' motions, responses in opposition, and replies, the court finds that there are genuine disputes of material facts as to whether a contract was formed and whether damages were caused by the alleged breach of contract. Accordingly, the court finds that SouthStar and T-Zone's motions for summary judgment for breach of contract must be denied.

## B. Promissory Estoppel

The doctrine of promissory estoppel was first recognized in South Carolina in Higgins Construction Co. v. Southern Bell Telephone & Telegraph Co., 281 S.E.2d 469 (S.C. 1981). "[The] doctrine holds 'an estoppel may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon, and if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice.'" Id. at 470 (quoting 28 Am. Jur. 2d Estoppel and Waiver § 48 (1966)). However, "[a] contract and promissory estoppel are two separate and distinct legal theories. They 'are two different creatures of the law; they are not legally synonymous; the birth of one does not spawn the other." Satcher v. Satcher, 570 S.E.2d 535, 538 (S.C. Ct. App. 2002) (quoting Duke Power Co. v. S.C. Pub. Serv. Comm'n, 326 S.E.2d 395, 406 (S.C. 1985)).

13

"The elements of promissory estoppel are (1) an unambiguous promise by the promisor; (2) reasonable reliance on the promise by the promisee; (3) reliance by the promisee was expected by and foreseeable to the promisor; and (4) injury caused to the promisee by his reasonable reliance." N. Am. Rescue Prod., Inc. v. Richardson, 769 S.E.2d 237, 241 (2015) (citing Davis v. Greenwood Sch. Dist. 50, 620 S.E.2d 65, 67 (2005)). "The applicability of the doctrine depends on whether the refusal to apply it 'would be virtually to sanction the perpetration of a fraud or would result in other injustice.'" Satcher, 570 S.E.2d at 538 (quoting Citizens Bank v. Gregory's Warehouse, Inc., S.E.2d 316, 318 (S.C. Ct. App. 1988)). "Notably, neither meeting of the minds nor consideration is a necessary element." Barnes v. Johnson, 742 S.E.2d 6, 11 (S.C. Ct. App. 2013). "Thus, in the interest of equity, the doctrine 'looks at a promise, its subsequent effect on the promisee,' and where appropriate 'bars the promisor from making an inconsistent disposition of the property.'" Id. (quoting Satcher, 570 S.E.2d at 538) (emphasis in original). However, "the presence of either an ambiguous promise or an injury not arising out of the inconsistent disposition precludes promissory estoppel's application, though perceived inequities may exist." Id. at 12. As the South Carolina Court of Appeals recently noted, "[a]dmittedly, determining exactly what [an injury in reliance on an unambiguous promise] means in a particular case can be difficult, and every promise cannot be enforced based solely on the promisee's hope the promisor will follow through." Cruz v. City of Columbia, 877 S.E.2d 479, 483 (S.C. Ct. App. 2022).

SouthStar argues that T-Zone has not proven each of the four elements and further raises an affirmative defense by claiming that promissory estoppel is not available to T-Zone because it has a contractual remedy against 10 Minute Fitness for this same injury.

14

See, e.g., ECF No. 33-1 at 13–17; ECF No. 45 at 13 (challenging in its reply that T-Zone's reliance was expected or foreseeable).  In essence, both parties ask the court to evaluate whether T-Zone has met its burden of proof for the promissory estoppel claim.  The court notes that T-Zone avers that its promissory estoppel cause of action is pleaded in the alternative to the breach of contract—namely, if the court finds no contract, then T-Zone asks for relief based upon promissory estoppel.

T-Zone seeks promissory estoppel because SouthStar's acknowledgments of its invoices were unambiguous and documented by emails, and furthermore, based on the prior course of dealings, T-Zone's reliance on the acknowledgments was reasonable, expected, and foreseeable.  Compl. ¶¶ 40–42.  T-Zone claims that these claims are unrebutted and seeks summary judgment on its promissory estoppel cause of action.  See ECF No. 32-1 at 6.  In response, SouthStar emphasizes that the only contract in effect was between T-Zone and 10 Minute Fitness, not SouthStar; thus, there was no unambiguous promise to pay, T-Zone did not detrimentally rely on SouthStar when it delivered equipment to 10 Minute Fitness, and any purported injury arose from 10 Minute Fitness's failure to pay.  ECF No. 40 at 16–19.  In any event, SouthStar emphasizes that T-Zone's continued delivery of equipment after 10 Minute Fitness failed to pay was fundamentally unreasonable.  Id. at 19.  In reply, T-Zone reiterates its original argument made in the motion for summary judgment and explains that the unambiguous promise arose because T-Zone released the equipment to 10 Minute Fitness and that its reliance was reasonable because SouthStar continued to pay for other equipment for nine months after the promise at issue was made.  ECF No. 44 at 3.

SouthStar filed a motion for summary judgment on T-Zone's promissory estoppel cause of action for three reasons.  ECF No. 33-1 at 13–17.  First, SouthStar argues that T-Zone has a contractual remedy against 10 Minute Fitness, not SouthStar, because T-Zone and 10 Minute Fitness were in privity of contract with each other due to its issuance of purchase orders.  In other words, SouthStar claims "T-Zone cannot resort to a claim based in equity against SouthStar where a contractual remedy at law exists against [10 Minute Fitness]," and that "contract govern[s] the substance matter of the dispute."  Id. at 13–14.  Second, SouthStar's "purported promise to pay" was an acknowledgment of receipt of a copy of an invoice sent to 10 Minute Fitness, "not an unambiguous promise." Id. at 16.  SouthStar emphasizes that an acknowledgment alone cannot create an obligation to pay the invoice.  Id. at 19.  Third, SouthStar argues that T-Zone did not rely on any promise from SouthStar because T-Zone "had already released the Machines prior to emailing SouthStar," and the purported course of conduct was inconsistent over time given the varying timing of payments, presumably meaning that the parties' course of conduct cannot be used to infer any elements of promissory estoppel.  Id. at 17.

In response, T-Zone first argues that though it has a remedy at law against 10 Minute Fitness, that does not affect its promissory estoppel claim because it is not seeking injunctive relief and SouthStar has provided no evidence that T-Zone would gain an adequate remedy from a lawsuit against 10 Minute Fitness.  ECF No. 39 at 5–6. Moreover, T-Zone argues that SouthStar's promise was not ambiguous because SouthStar stated that they would make payment for the equipment "when it was released" and "did not need payment terms."  Id. at 7.  T-Zone points out that after SouthStar agreed to wire the money to T-Zone, SouthStar continued to wire money to T-Zone "for

16

payment on eighteen separate occasions from the date of the email from Linney until SouthStar's termination of the relationship in August of 2020," and while SouthStar may have been inconsistent with payment, such inconsistency should not relieve SouthStar of its liability. Id. Finally, T-Zone emphasizes that it can show its reliance on the promised payment because not only was T-Zone "looking to SouthStar for payment," as a part of the factoring agreement SouthStar also made T-Zone forgo "its first priority security interest," also described as "its priority UCC filing." Id. at 6, 8 (referencing ECF No. 39-6). In reply, SouthStar argues that based on its analysis for why there is no valid breach of contract claim, there also cannot be a promissory estoppel claim because the ambiguous July 8–9 emails between Linney and Aboody meant that SouthStar made no clear promise to pay. ECF No. 45 at 7. Further, SouthStar argues that since it never told T-Zone that SouthStar had a legal obligation or duty to pay, there was no expected or foreseeable reliance on SouthStar's purported obligation to pay. Id. at 13. Finally, SouthStar argues that T-Zone has misconstrued certain facts which, if properly construed, would undermine any contention that T-Zone has demonstrated a reliable course of performance.[5] Id. at 9.

The court has evaluated each of the elements of promissory estoppel, as well as SouthStar's affirmative defense regarding a contractual remedy against 10 Minute

---

[5] Specifically, SouthStar claims that T-Zone's only evidence that equipment was released and payment occurred eighteen times comes from a "chart [T-Zone] created" and the chart itself only shows eight purported acknowledgements. The chart also purportedly ignores that 10 Minute Fitness had already started paying T-Zone directly during this period. ECF No. 45 at 9 (citing ECF No. 39-3). Additionally, SouthStar argues that T-Zone misconstrued Linney's testimony from her deposition to arrive at the "fact" that SouthStar made T-Zone forgo its priority UCC filing. Id. at 13. SouthStar did not require T-Zone to release its UCC filings, nor does SouthStar control all of 10 Minute Fitness's funds. Id.

Fitness,[6] and found that genuine disputes of material facts exist for many of the same reasons described under breach of contract.  In any event, the court finds it would be premature to grant summary judgment on T-Zone's promissory estoppel claim because the breach of contract claim is brought in the alternative and remains unresolved.  See Besley v. FCA US, LLC, 2016 WL 109887, at *3 (D.S.C. Jan. 8, 2016).  Accordingly, the court finds that both SouthStar and T-Zone's motions for summary judgment for promissory estoppel must be denied.

### C.  Unjust Enrichment

"Unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff."  Dema v. Tenet Physician Servs.-Hilton Head, Inc., 678 S.E.2d 430, 434 (2009).  To succeed on an unjust enrichment claim, a plaintiff must prove: "(1) [a] benefit conferred by plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to

---

[6] "In South Carolina, a party is generally precluded from pursuing a claim for either unjust enrichment or promissory estoppel where a valid contract governs the subject matter in dispute."  Besley v. FCA US, LLC, 2016 WL 109887, at *3 (D.S.C. Jan. 8, 2016).  When promissory estoppel and/or unjust enrichment claims are stated in the alternative to a breach of contract claim where the existence of a contract is contested, courts have found it premature to dismiss those causes of action where the contractual remedy is uncertain.  See id.; Melton v. Carolina Power & Light, 2012 WL 2401635, at *3 (D.S.C. June 25, 2012).  To be sure, this order resolves motions for summary judgment and therefore the guidance from orders resolving motions to dismiss is not exactly analogous.  However, the parties have not identified any cases directly on point nor has the court found cases expressly considering similar facts to those in this case where a manufacturer has a contract with a now-bankrupt wholesaler and the manufacturer claims promissory estoppel against the manufacturer's financing firm.  As such, genuine disputes of material facts exist over whether this affirmative defense applies, and the court finds that it may not grant summary judgment on the basis of the affirmative defense at this time.

retain it without paying its value." <u>Myrtle Beach Hosp., Inc. v. City of Myrtle Beach</u>, 532 S.E.2d 868, 872 (2000). "The South Carolina Supreme Court defines benefits as 'goods or services.'" <u>Quintech Sec. Consultants, Inc. v. Intralot USA, Inc.</u>, 2011 WL 5105446, at *4 (D.S.C. Oct. 27, 2011) (citing <u>Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.</u>, 684 S.E.2d 756, 764 (S.C. 2009)). The plaintiff may not recover under unjust enrichment if the tasks the plaintiff is seeking compensation for under quantum meruit are encompassed within the terms of an express contract which has not been abandoned or rescinded. <u>Paul L. Kennedy Enters., Inc. v. Manganaro Se., LLC</u>, 2023 WL 1420030, at *3 (D.S.C. Jan. 31, 2023) (citing <u>Swanson v. Stratos</u>, 564 S.E.2d 117, 120 (S.C. Ct. App. 2002)).

T-Zone claims that if SouthStar has in fact received payment from 10 Minute Fitness for the equipment and has nevertheless failed to remit payments to T-Zone, "it has received and realized a benefit as a result." Compl. ¶ 47. Retention of all the funds for the delivered equipment identified in the six invoices "would be inequitable." <u>Id.</u> ¶ 48. As such, T-Zone argues that based on the doctrine of unjust enrichment, it is entitled to a judgment against SouthStar in the amount of $167,125 plus prejudgment interest. <u>Id.</u> ¶ 49. T-Zone filed a motion for summary judgment on its unjust enrichment cause of action, essentially claiming that the facts underlying its claim are unrebutted. ECF No. 32-1 at 7. In response, SouthStar emphasizes that T-Zone has not provided any evidence of the "actual payments by Costco to SouthStar for the machines that were the subject of purchase orders 5799, 5802, 5805, 5806, 5808, and 5812." ECF No. 40 at 23. Rather, SouthStar emphasizes that it "purchased millions of dollars of accounts receivable from 10 Minute Fitness but was never paid by Costco on those invoices." <u>Id.</u>

Thus, T-Zone conferred no benefit to SouthStar. Id. In reply, T-Zone disagrees and explains that during the time period in which the invoices at issue were not paid, "SouthStar received payment totaling almost $900,000 from Costco for sales of the equipment provided by T-Zone." ECF No. 44 at 4. At the hearing the parties agreed that since Costco processes payments to its suppliers well after the consumers purchased the goods, there is no clear way to tie the processed payments to specific equipment or invoices. ECF No. 53.

SouthStar filed a motion for summary judgment on T-Zone's unjust enrichment cause of action arguing that since T-Zone and SouthStar did not have a contract with each other, SouthStar did not receive any benefits from T-Zone. ECF No. 33-1 at 21. To the extent that T-Zone's unjust enrichment argument relies on the fact that SouthStar purchased accounts receivable from 10 Minute Fitness, SouthStar argues that no enrichment occurred because Costco never paid them for them. Id. Additionally, SouthStar emphasizes that T-Zone cannot show that SouthStar received or retained a benefit that was inequitable. Id. In response, T-Zone argues that SouthStar was unjustly enriched because it received $900,000 in payments from Costco for sales of equipment provided by T-Zone during the period where T-Zone remained unpaid for the six invoices, totaling $167,125. ECF No. 39 at 8 (citing ECF No. 39-4). T-Zone argues that Melanie Brown ("Brown") of SouthStar testified in her deposition that by November 16, 2019, SouthStar had received payment from Costco for the equipment for which the six unpaid invoices were issued. Id. (citing ECF No. 39-8). T-Zone argues even though SouthStar subsequently got overextended to 10 Minute Fitness, that does not discount the fact that had T-Zone not released the equipment, SouthStar would have suffered an even

20

greater loss since Brown acknowledged that SouthStar received payment for the equipment identified in the invoices. Id. at 9. In reply, SouthStar argues that if T-Zone conferred a benefit, it was to 10 Minute Fitness and not SouthStar because "T-Zone did not show that SouthStar was actually paid by Costco for these exact pieces of equipment," nor that SouthStar received or retained any of the funds in question. ECF No. 45 at 11–12 (citing ECF No. 45-4 at 162:21-163:3). For example, SouthStar claims that "T-Zone mischaracterizes Melanie Brown's deposition testimony to attempt to show that SouthStar was unjustly enriched"—the transcript shows that Brown was asked to presume the sale of the equipment and therefore her testimony does not establish that the equipment in question was in fact sold. Id. Thus, SouthStar argues that if a benefit was conferred, it was upon 10 Minute Fitness, which means the unjust enrichment claim against SouthStar must fail. Id. at 13.

Again, the court finds that there exist genuine disputes of material facts such that the court may not grant summary judgment on the unjust enrichment cause of action. In any event, the court finds it would be premature to grant summary judgment on T-Zone's unjust enrichment claim because the breach of contract claim is brought in the alternative and remains unresolved. See Besley, 2016 WL 109887, at *3. Consequently, the court denies both T-Zone and SouthStar's motions for summary judgment on the unjust enrichment cause of action.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** T-Zone's motion for summary judgment and **DENIES** SouthStar's motion for summary judgment.

21

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 7, 2023**
**Charleston, South Carolina**